We'll hear argument next in City of Birmingham Retirement and Relief System v. Davis, 19-1378. Hold on one second, Mr. Nutley. Okay, go ahead. Good morning, and may it please the Court, Ben Nutley here on behalf of John W. Davis, the appellant in this matter. This is the case where the Fresno County decision came down right after the appeal was filed, which gave some guidance on how the Court should handle this type of case. By that time, we'd already filed the appeal saying that we thought that the judge hadn't exercised discretion or shown the exercise of discretion and that the case should be remanded so that the Court could do that, and with some comments about how to assess that fee. And the Fresno County case was important when it came down because it clarified that when the Court looks at a load-star multiplier cross-check for a common fund fee that the Court is determined to do as a percentage, or whether or not the Court is using a percentage or if the Court is using a load-star multiplier for that common fund fee, Fresno County makes it clear that the types of risk that you look at to fix the multiplier are really very limited. Limited to really to a kind of an opportunity cost risk or to a portfolio risk that the lawyer who is participating in the case has. Are there some findings that relate to that kind of a risk here? So isn't there a colloquy with the District Court about there's lots of foreign documents and there's, you know, that's the one that I'm thinking of now, but are there special challenges about this particular kind of litigation? Can't we understand that as a kind of opportunity cost risk to their portfolio to take on this kind of a case? No, because that is already impounded in the load-star figure. In other words, the hourly rate rather than the multiplier. And that's where a lot of the play is here is whether you look... The hourly rate is always going to be in the load-star figure, but the idea is that there's something, despite the hours you spend on it, there's something uniquely challenging or difficult about this particular case. This particular case? I don't think so. The District Court seemed to think that there was, right? The District Court says, I remember spending a lot of time on the motion to dismiss. Correct. Basically endorsing all the challenges that the counsel had just recounted to her about this particular case. That's right, and I think that would be part of a... In the old days, under the Goldberger case, that would go to a quality multiplier or what Goldberger described as a quality multiplier. In other words, this is a challenging case. It's especially challenging, therefore we're going to give you a higher multiplier. But what Fresno County says is no, relying on Purdue, the intervening case, the Supreme Court case in Purdue. Fresno County only speaks in terms of portfolio risk, only. It does not talk about the challenges of the case. And the reason for that is because of the extremely high hourly rates here. What they're saying is, we expect that if you have a challenging case, you're going to be able to handle it competently, because you're charging $400 to over $1,000 an hour for your attorneys. Why isn't that a portfolio risk? So if there's this challenge that lots of witnesses and documents were in Brazil and Australia, and that's beyond the District Court's subpoena power, and that there's 900,000 pages of documents in Portuguese, why isn't that a risk to take that on? Because it's not clear that they'd be able to see the case through. Isn't it risky to take on that kind of a case when you could be taking on other cases? It is, and yet the portfolio risk doesn't relate just to the specific case you're talking about. So what kind of a finding would the District Court have to make to justify the fee award? Excellent question. I think that the District Court—and let me be clear. I'm not entirely sure, because Fresno County is a little bit new and hasn't had a chance to get really construed. It appears to me, from what Fresno County says, that you're looking at the risk over that lawyer's portfolio of how many cases that lawyer has won or lost, or that law firm. How often do they not get paid? How often do they not get paid what they ask for? And that is intrinsic to the lawyer and the lawyer's firm. Possibly, I suppose, evidence about the risks, the similar risks faced by the industry, by lawyers who practice in that field, possibly, but I think that more specifically, certainly, the lawyers have to come in with some sort of evidence about how many of those cases they actually are able to recover and how many they're not. And the truth is, as Goldberger tells you— You're saying they would have had to show, we could have made X amount of money from doing something else, and that would justify more fees for doing this case. I think that would be one way to do it, sort of. That would be the opportunity cost, but I think there's also sort of the portfolio risk that is what the Fresno County Courts seem to focus on. I think that's true, that if they came in and said, well, we could have worked on this hourly case where somebody was going to pay us a great deal of money, and I think that would certainly be evidence that would probably be useful and probably be relevant. But I think that what the court seems to be talking about is a more globalized, what is your portfolio risk over your entire catalog of cases. And so I don't think that—so the answer is no. Excuse me. Anything further? Mr. Nutley? I do want to point out that this case, and this goes further to Judge Menache's earlier comment, this is a case where, yes, it was in Brazil, and, yes, there were issues with that, but it also had to leg up that there were investigative and judicial proceedings, just like in the Goldberger case. The Goldberger case pointed out, well, this is a notorious fraud. There were investigations and there were criminal proceedings. Therefore, there wasn't a lot of litigation risk here, not nearly as much as you say. Similar situation here. You've reserved three minutes for rebuttal. Yes, that's right. We'll hear from Mr. Daly. Thank you. Good morning, Your Honors. Joseph Dave Daly for the League Plaintiffs Appellees. You know, I'm glad to hear counsel say that Fresno County issued guidance. What Fresno County did, actually, was drive a nail through the heart of his appeal. This is his objection down below. It's in the record at ECF 126-1, page 4. Here is the bold heading, class counsel's fee should be limited to Lodestar. That was the crux of his appeal down below. That was the presumption that we should have been limited to our Lodestar and the court could not grant us a fee award based upon a reasonable percentage of the fund recovered. If we were persuaded that you're not limited to the Lodestar, we've got a fair amount of precedent that suggests that there should be reasons given that we can review. Perdue says enhancing the Lodestar should be rare, exceptional. Bolar says that there should be specific reasons to depart from the Lodestar. And Fresno County, while recognizing leeway to enhance the Lodestar, rejects a routine 25% award. Indeed, it talks about funds under or funds above 50 to 75 million being more in the 11 to 20% range. So why don't we have to consider whether we have enough explanation here for a 30% enhancement? Well, I would hope Your Honors would look over the record and see that Judge Buchwald There has to be an explanation to go for this high an enhancement, right? Completely agree. And that explanation doesn't necessarily have to be set forth chapter and verse in the fee award. It can be set down in the fee award order, supplemented by the record. And the judge told us that she viewed it as a complex case, one in which she devoted a considerable amount of time to the efforts. But is that enough? Not on its own. But what else is there to explain a 30% enhancement, which seems quite high? Well, it's a 2.72 enhancement of the multiplier. The 30% is a reasonable percentage. It's 30% over the Lodestar, isn't it? No, Your Honor. Help me out with the arithmetic. Sure. The fee awarded was a percentage fee. It was 30% of the 50 million that we recovered for the benefit of the class. 30% equaled 15 million. Of the common fund. Yes, but. Of the common fund. Okay, go ahead. And then our Lodestar in the case was $5.5 million and half a million dollars in expenses, not one penny of which was guaranteed to us. And Judge Buchwald correctly recognized that the case was a risky one to be brought in the beginning, in the first place. Several points to that. Number one, we know it's a securities class action. No matter what Goldberger, this Court said in Goldberger some 20 years ago, saying that securities class actions were not necessarily risky. This is in our briefing, but I just do want to remind the panel. That Goldberger itself was not a PSLRA case. It was actually begun in 1990, even though that was a year 2000 decision. The PSLRA had not yet come about. Goldberger cited to an old law review article looking at a limited sample of just nine IPO cases and said that these cases are not very difficult to bring and they often settle. Well, that may have been true of that small sample size, but that is not true of these securities class actions as a rule. Since then, we have seen scholarly economic analysis of securities class actions. Fully 45% of them are dismissed with prejudice. Another 30% of them are dismissed, partially dismissed, leaving only 25% to go on to live for another day. The district court. Why do those circumstances warrant a multiplier? If a lot of them are dismissed outright, that suggests they shouldn't have been brought to begin with. I beg to differ, Your Honor. I've been up in circuit courts around the country enough, defending 12B6 dismissals of these cases to realize that several of them are very, very good cases, but for one reason or the other. We see them on appeal, and a non-insignificant number of them don't survive. They may not be being brought by your firm, but the reality, if you're going to cite the absolute numbers, is that a number of them just can't plead the elements of a securities case. And that may be so, Your Honor. I would like to point out this court in Goldberger says that each one of these cases in which a fee award is given, and I'm paraphrasing here, they must be looked at upon their own merits. It's case-by-case analysis. So here Judge Buchwald was not necessarily locked into giving a multiplier of a certain amount, although this court in Wal-Mart said that a multiplier of 3.5 was, quote, reasonable given the landscape of lodestar multipliers out there. You mentioned earlier, Judge Raji, that Perdue talked about the skepticism with which we look at lodestar multipliers. But I would suggest to Your Honor that that circles back into my friend's position, which has been his position all along, and that is that we are to look to the Supreme Court's fee-shifting cases with their natural skepticism towards enhancing any lodestar for risk, for quality of result, et cetera. But that's not what happens in these common fund cases. This court has said in Goldberger, and most recently reaffirmed late last year in Fresno County, that we cross-check a reasonable percentage fee with a lodestar, but that lodestar does not have to be a straight, unenhanced lodestar. The percentage fee can equal, can be less than the lodestar. It can be equal to it, but it can be greater than it. And what we do, what we look to is what Goldberger says we look to. We look to the risk of the case, and we look to the quality of the representation. Goldberger says the quality of the representation is best summed up by looking to the results. I think you said a moment ago you were going to say, like, six factors about why this was, there were adequate findings of risk here that justified the hire. Well, and you had only, I think you only got to one, which was that it was a securities class action. So I'm interested in the other. Sure, sure. And when Judge Buchwald referred back to the difficulties on the motion to dismiss, I submit that was shorthand for covering all the issues in this case, problems with false statements, problems with loss causation, problems with materiality. My friend mentioned earlier. Is that accounted for in the lodestar? I mean, don't you just spend more hours on those things because it's more challenging? Your Honor, this court in Grinnell many, many years ago said that the enhancement to the lodestar is to compensate the attorneys for taking on the case because the attorneys, their normal hourly rate is what they would be paid whether they win or lose. So given that the case has these features that make it more challenging, you're compensating them for the initial decision to take on the case as opposed to taking on another case. That's true. That's true. But we're also, it is the huge risk that these cases present. I mentioned earlier $5.5 million of our firm's money, perhaps not a check, but attorney and staff time put out with no guarantee of recovery in the sometimes hostile landscape that Judge Raji mentioned earlier where a lot of these cases are dismissed. And I think the district court's reasoning in her fee award and at the hearing. I'm sorry, please. Was there not a fairness hearing? There was a fairness hearing, yes. And the colloquy between Judge Buchwald and class counsel at the hearing. Objective counsel did not deign to go to that hearing. We've noted that perhaps had he, he could have challenged Judge Buchwald on some of the things that she was saying or not saying in his mind. The lack of specificity or listing all of the reasons is not one of the claimed errors, as I understand, on appeal. I believe he's trying to say that the fee order could have been more explicit. And I've got the fee order here in front of me, and she specifically makes findings. And many of the findings go to both risk and counsel's skill and the recovery that we got. A6 to 9? Exactly, Your Honor. I know I got the math right wrong at this point, but nevertheless there is this view that about 20% is kind of the high end of a fee award from a common fund for a fund that exceeds $75 million. Isn't that what Fresno County says? And this was only a $50 million fund, though. We were at the very basement of ---- Well, it's 11% to 20%, I believe is what is said in Fresno County. You are at 30%, and it's not clear to me what the reason is for that. I'm willing to hear the reason, but it's not apparent to me what it is in this case. That's why I wonder if we need more information from the judge. I don't think so, Your Honor. I think the fee award, the fee order, as I pointed out, is replete with findings. She doesn't necessarily drill down to each specific ---- I'm looking at the fee order. So she says lead counsel pursued the litigation on a contingent basis. This is paragraph 7E. And it involves complex factual and legal issues. But what else are the findings as to risk? Right up above that, lead counsel pursued the litigation on a contingent basis. Any fee award. It's just those two paragraphs of the order? Those two paragraphs of the order would go to risk. But then again ---- But what is said would be true of most securities cases. And with respect to risk, too, you're telling us it's true of most securities cases. And now we're considerably outside what Fresno County kind of talks about as an outside benchmark. But in this case, Your Honor, let's not forget, this is not a securities class action taking place solely in the United States on the East Coast or the West Coast. This is a securities class action that involves the horrendous accident over in Brazil. And yet the defendants here are based in Australia. The investigation that my friend mentioned earlier, this is not like Goldberger where class counsel were able to piggyback, so to speak, on investigative efforts. The lodestar compensates you for all your work. It's now that you want a premium on top of that. And I'm not sure that whether it's in Cincinnati or in Sydney, if you're compensated for your travel and your work hours and all, I'm not sure that that factor weighs heavily in favor of a large enhancement. Two points. Number one, that premium is based on a two-prong analysis, risk and the result. We pointed out that a $50 million recovery here for the class was 20% of the estimated recoverable damages. By any yardstick you use in modern securities class actions over the last two decades, that is a fantastic recovery when ordinarily the ratio between those two numbers is 1.3 to 2.6. My second point is that Goldberger's ---- You know, the problem with that is that for those who deal in this area of litigation all the time, it sounds like a fantastic result. To the man on the street, it might not sound so fantastic. And we are dealing with common funds where the payments mean less for the person's injured. Understood. And this is in the record. It's also in our briefing. Despite over 375,000 notices going out to the class, this fantastic result, our notice that we were going to seek up to 30% of the fee in the class notice produced one objection to the fee. One objection. No institutional investor. Everybody was apparently very satisfied with the amount of money they were getting. Thank you, Your Honors. Just to the last point, institutional investors, for whatever reason, rarely object to class action attorneys' fees. I don't know why. It may be that they think that there's not enough in it for them to do that because it's difficult. Why should we be concerned if they're not concerned? Because you're in the position to be concerned. But I'm saying these are the people who ---- it's they who are losing the money from the 30%. Yes. And if they're not concerned, why should we be? It isn't that they're not concerned. They're not coming in to object to the fee. That doesn't mean that if they understood ---- it is difficult to object to fees and it is rare that you're able to prevail in objecting to them. It would not be surprising if they thought it wasn't worth their time. Yes, Judge LaHier, we are definitely saying that the district court didn't do the ---- make the findings it needed to make to approve the fee in the first instance. Can we take the comments at the Fairness Hearing and other comments in the record into consideration in assessing whether Judge Buckwalt here really fully considered the ---- or justified the increase? You could if there were any such comments. I think the comments that the judge made in the hearing are very ---- are cryptic almost and certainly don't rise to the level of explaining why such a high multiplier was necessary. I mean, we're talking about taking ---- So other individual ---- there are other individual claims in their institutional claimants and individual ones, right? Correct, yes. And no objections from them either? That's right. In the entire class, it is stockholders, right? So, yes, there would be individuals and there would be other institutions. Courts ---- we have to debrief this. Courts do not like to put much stake in that because there is not a good reason to object to fees most of the time in the sense that it doesn't get you anywhere. If you have a $10 or $20 or $100 stake in the matter, going to object to the fee is going to increase your maybe $5 or $10, you know. And, you know, my client is a stockholder but also is a lawyer who participates in these cases and could benefit from a ruling that would ---- that helps other cases. So, in other words ---- If all we said was that the ---- in justifying the premium, the district court just needed to say more, how would that help you? Well, more in the sense that the district court would need to recognize and identify why there should be a 2.72 multiplier applied to fees that are already very high, between $400 and $1,000. So, in other words, the judge should explain why I'm about to pay $2,800 to the top billing attorney on this case per hour for every single hour that attorney billed. That is necessary not just to help me but to help subsequent courts, to help all of us to understand why this fee award was made. Because this is, as Judge Raji mentioned, this is the class's money. This is money that belongs to the class that was for their benefit. So that explanation needs to be made to the class, to other courts, and for posterity, and to help other courts make these fee awards. I think that is absolutely necessary. And I think that the broad discretion that we talk about with district courts, when we say we give them very broad discretion on their fees, we will not interrupt what a district court has come to a conclusion on a fee. What is presupposed by that is that the district court has done a very good job of explaining it in the first place. So, in other words, the district court has to exercise the discretion, having exercised that discretion, we give the district court a lot of deference. We don't come in and say, well, there's a figure that basically results in some vague explanation for it. We're going to give that complete deference. That's not the way it goes. Thank you very much. Thank you.